UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS LE'BARRON GRAY,<br><br>Plaintiff,<br><br>v.<br><br>DR. N. ODELUGA, et al.,<br><br>Defendants. | Case No. 1:19-cv-0183-JLT (PC)<br><br>**ORDER REQUIRING PLAINTIFF TO FILE A RESPONSE**<br><br>(Doc. 13)<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff has filed a first amended complaint asserting constitutional claims against governmental employees. (Doc. 13.) Generally, the Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

////

////

1

## I. Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Prisoners may bring § 1983 claims against individuals acting "under color of state law." See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

At all times relevant to this action, Plaintiff was a state inmate housed at North Kern State Prison ("NKSP") in Delano, California. Plaintiff brings this action against Dr. N. Odeluga, the NKSP Chief Medical Executive; Dr. A. Shittu, the NKSP Chief Physician and Surgeon; and Dr. Steven M. Yaplee, an ophthalmologist and glaucoma specialist in private practice. Plaintiff seeks several million dollars in damages and injunctive relief in the form of a transfer to California Correctional Medical Facility in Vacaville, California.

////

////

Plaintiff's allegations may be fairly summarized as follows:

**A. Allegations Against Dr. Yaplee**

On February 8, 2016, Dr. Yaplee, a NKSP-contracted medical provider, performed a cataract surgery on Plaintiff's left eye even though Plaintiff had only agreed to have a procedure to reduce the pressure in that eye. Between June 2016 and October 2016, Plaintiff continually told Dr. Yaplee that his vision was worse. In November 2016, Dr. Yaplee referred Plaintiff to Dr. Tawansy, another NKSP-contracted medical provider.

**B. Allegations Against Dr. Odeluga**

Prior to February 2016, Dr. Odeluga was aware that Dr. Yaplee seriously injured inmates through surgery. Dr. Odeluga, however, did not share this information with Plaintiff and instead permitted Dr. Yaplee to perform the February 2016 surgery on Plaintiff's left eye.

Dr. Odeluga referred Plaintiff to a Dr. Tawansy who performed two eye surgeries on Plaintiff between January 2017 and June 2018, one to correct the surgery performed by Dr. Yaplee and one to correct a eye surgery performed by a Dr. Lauritzen from June 2012.

Later, Dr. Odeluga canceled NKSP's contract with Dr. Tawansy without informing Plaintiff and thereby excluding him from being involved in decisions regarding his own medical treatment. After canceling Dr. Tawansy's contract, Dr. Odeluga scheduled Plaintiff with Dr. Lauritzen, even after Plaintiff filed a grievance concerning the botched June 2012 eye surgery performed by that doctor.

**C. Allegations Against Dr. Shittu**

Dr. Shittu played a role in denying the aforementioned grievance Plaintiff filed concerning treatment by Dr. Lauritzen. While Dr. Shittu had access to Plaintiff's medical files and could have verified Plaintiff's allegations, Plaintiff was merely informed (presumably, though not entirely clear, by Dr. Shittu) that he did not have a right to choose his own doctor. Dr. Shittu then insisted on Plaintiff being seen by Dr. Lauritzen. While Plaintiff alleges that he refused to be treated by Dr. Lauritzen, he also accuses Dr. Shittu of directing medical staff to falsify a refusal document on or around August 22, 2018.

In January 2019, Plaintiff learned that another inmate was referred to Dr. Tawansy, the

3

medical provider who Plaintiff wanted to see. Plaintiff submitted a request to be referred to Dr. Tawansy, but this request was denied on April 25, 2019. Instead, Plaintiff was sent to Dr. Yaplee, who then referred Plaintiff to Dr. Tawansy.

On May 2, 2019, Dr. Shittu conducted a face-to-face interview with Plaintiff regarding the Dr. Lauritzen-related grievance. During this interview, Dr. Shittu said that Plaintiff could only see Dr. Tawansy for emergency reasons, and his condition did not constitute an emergency.

Also, on May 2, 2019, Plaintiff was given a vision impairment test at NKSP, and he was then transferred to an outside medical provider on May 6, 2019, to confirm the results of the test. This medical provider concluded that Plaintiff's eye condition was beyond repair and that he was permanently vision impaired.

**III. Discussion**

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be

substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also McGuckin, 974 F.2d at 1060. In addition, a physician need not fail to treat an inmate altogether in to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Plaintiff's allegations against Dr. Yaplee fail because they sound in negligence/medical malpractice. That Dr. Yaplee did not perform a surgery properly does not, standing alone, suggest deliberate indifference. Furthermore, while Plaintiff alleges that Dr. Yaplee ignored his complaints about his vision after the February 2016 surgery, Plaintiff also alleges that Dr. Yaplee referred Plaintiff to Dr. Tawansy for further care. There is no deliberate indifference on these allegations.

| | |
|---|---|
| 1 | Plaintiff's allegations again fail to state a claim against Dr. Odeluga. Though Plaintiff alleges this Defendant knew of problems with Dr. Yaplee's provision of medical care but nonetheless continued to refer inmates to him, Plaintiff still fails to specify how Dr. Odeluga knew this information or what sorts of problems were caused by Dr. Yaplee. Plaintiff further alleges that Dr. Odeluga did not confer with Plaintiff regarding the cancelation of Dr. Tawansy's contract with NKSP, which Plaintiff contends resulted in his exclusion from decisions about his medical care, but these allegations do not state a claim. It is also unclear what personal role this Defendant had in Plaintiff's treatment. Although Plaintiff claims that Dr. Odeluga directed Plaintiff to be seen by Dr. Lauritzen even after Plaintiff filed an inmate grievance concerning the latter's care, there are no allegations that Dr. Odeluga was personally aware of this grievance. Plaintiff's remaining allegations as to this Defendant, including what role, if any, he played in the processing of Plaintiff's grievance, are too vague and conclusory to state a claim. |

Plaintiff's allegations again fail to state a claim against Dr. Odeluga. Though Plaintiff alleges this Defendant knew of problems with Dr. Yaplee's provision of medical care but nonetheless continued to refer inmates to him, Plaintiff still fails to specify how Dr. Odeluga knew this information or what sorts of problems were caused by Dr. Yaplee. Plaintiff further alleges that Dr. Odeluga did not confer with Plaintiff regarding the cancelation of Dr. Tawansy's contract with NKSP, which Plaintiff contends resulted in his exclusion from decisions about his medical care, but these allegations do not state a claim. It is also unclear what personal role this Defendant had in Plaintiff's treatment. Although Plaintiff claims that Dr. Odeluga directed Plaintiff to be seen by Dr. Lauritzen even after Plaintiff filed an inmate grievance concerning the latter's care, there are no allegations that Dr. Odeluga was personally aware of this grievance. Plaintiff's remaining allegations as to this Defendant, including what role, if any, he played in the processing of Plaintiff's grievance, are too vague and conclusory to state a claim.

Lastly, Plaintiff asserts a deliberate indifference claim against Dr. Shittu. While generally an inmate does not state a claim against a prison official involved in the processing of a grievance, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), Plaintiff's allegations suggest that Dr. Shittue was in a position to refer Plaintiff to a medical provider who could treat Plaintiff's eye condition. Despite the ability to do so on or around August 2018 and despite knowledge of the seriousness of Plaintiff's eye condition, Dr. Shittu refused the referral. Dr. Shittu's failure to provide a timely referral resulted in delayed care and complete vision loss for Plaintiff. Liberally construing the pleading, the Court finds that Plaintiff has stated a cognizable claim against Dr. Shittu.

**IV. Conclusion**

Plaintiff's complaint states a cognizable Eighth Amendment claim against Dr. Shittu. All other claims are not cognizable as pleaded. The Court will grant Plaintiff an opportunity to file a second amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, Plaintiff may forego amendment and notify the Court that he wishes to stand on his first amended complaint. See

6

1 | Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If the last option is chosen, the Court will issue findings and recommendations to dismiss the complaint without leave to amend, Plaintiff will have an opportunity to object, and the matter will be decided by a District Judge.

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "Second Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, the Court ORDERS that:

1. Within 30 days from the date of service of this order, Plaintiff must file either a second amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, or a notice of election to stand on the first amended complaint; and

2. If plaintiff fails to file a second amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to state a claim.

IT IS SO ORDERED.

Dated: **October 26, 2019**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE